```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND

DIANE WILLIAMS,                   :

     Plaintiff,                   :

v.                                :
                                      Civil Action No. GLR-12-238
BALTIMORE CITY                    :
COMMUNITY COLLEGE, et al.,
                                  :
     Defendants.
                                  :
```

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant, Baltimore City Community College's ("BCCC") Motion for Summary Judgment. (ECF No. 45). Plaintiff Diane Williams brings this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (2012) action against BCCC, her former employer. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, BCCC's Motion for Summary Judgment will be granted in part and denied in part.

**I. BACKGROUND**

Williams was diagnosed with a degenerative eye disease called Keratoconus in the tenth-grade. Keratoconus causes a distortion in the shape of the eye. Symptoms can include blurry vision, increased light sensitivity, halos around light, eye strain, headaches, eye pain, and eye irritation. It can require

treatments that reshape the cornea, or, in Williams's case, corneal transplant surgery.

BCCC hired Williams as Assistant Director of Housekeeping in May 2007. In 2008, as a result of complications from her Keratoconus, Williams required surgery on her right cornea and a left corneal transplant. On June 2, 2008, Williams submitted a request for medical leave, under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) (2012), from June 10, 2008 through December 10, 2008.

Williams underwent surgery on her right cornea on June 10, 2008. On June 24, 2008, BCCC informed Williams that her "request for <u>intermittent</u> leave under the FMLA [was] approved from the requested period of June 10, 2008 through December 10, 2008."[1] (Def.'s Mot. Summ. J., Ex. 6, ECF No. 45-8) (emphasis added). After the first surgery, Williams did not return to work before undergoing a corneal transplant in her left eye on August 12, 2008.

On August 27, 2008, BCCC sent Williams a letter informing her that her twelve-week FMLA benefit would expire as of September 3, 2008. (Def.'s Mot. Summ. J., Ex. 8, ECF No. 45-10). Further, the letter stated that if Williams was unable to

---

[1] While the parties' understanding of the term "intermittent leave" is unclear, the record is clear that Williams repeatedly informed BCCC that she would be able to return to work on December 10, 2008.

2

return to work on September 4, 2008, she was required to submit a doctor's note and appear for a Workability Examination by the State Medical Director. (Id.). In response, on September 2, 2008, Williams submitted a note from her treating ophthalmologist indicating that she was still under his care and recommending a return-to-work date of December 10, 2008.

Williams presented herself to the State Medical Doctor, Dr. Lyons, for a workability evaluation on September 16, 2008. In his Workability Evaluation, dated September 23, 2008, Dr. Lyons noted Williams's symptoms as:

> limited vision in her right eye and little to no vision in her left eye. In the left eye, she is only able to see light and shapes. She complains of photophobia in both eyes, and intense headaches[,] . . . she cannot read printed material[,] . . . is unable to tolerate looking at a computer monitor[, and] has poor depth perception.

(Def.'s Mot. Summ. J., Ex. 1 ["Workability Evaluation"] at 3, ECF No. 45-3). Dr. Lyons opined that Williams was unable to return to work, and that her symptoms were "unlikely to improve enough in the foreseeable future that would enable her to safely and reliably perform the full duties of [her] position." (Workability Evaluation at 5).

By letter dated October 3, 2008, Human Resources Associate Marcia J. Tisdale advised Williams that "Dr. Lyons came to the determination that based on [her] condition; [her] return to work date should remain as Wednesday December 10, 2008." (Pl.'s

3

Resp. in Opp'n Def.'s Mot. Summ. J. ["Opp'n"], Ex. 6, ECF No. 50-6). On October 6, 2008, however, Ms. Tisdale sent a second letter informing Williams that based on Dr. Lyons's opinion that her symptoms were "unlikely to improve enough in the foreseeable future that would enable her to safely and reliably perform the full duties of [her] position," it had been determined that she was no longer physically capable of performing her duties. (Opp'n, Ex. 7 ["October 6, 2008 Letter"], ECF No. 50-7). Ms. Tisdale advised Williams to notify the College of her intentions related to her continued employment. (Id.). By letter dated October 17, 2008, Williams reiterated her intention to return to work on December 10, 2008.[2] (Opp'n, Ex. 8, ECF No. 50-8).

Also on October 17, 2008, Dr. Lyons clarified his prognosis regarding his reference to the "foreseeable future" in a formal Workability Evaluation Clarification that indicated he did not believe Williams would be able to return to work by December 10, 2008, as stipulated by her treating ophthalmologist. (Opp'n, Ex. 9, ECF No. 50-9). Finally, on November 3, 2008 Williams received a letter from BCCC stating that she would be terminated if she failed to return to work on October 31. (Opp'n, Ex. 10,

---

[2] The Court finds it significant to note that as of September 23, 2008 Williams was approved to receive employee to employee leave donations through the State Employee's Leave Donation Program. (Opp'n, Ex. 14, ECF No. 50-14). The record before the Court indicates that Williams was being credited with donated sick leave as early as July 30, 2008. (See October 6, 2008 Letter).

4

at 1, ECF No. 50-10).  The letter was dated October 28, 2008 and the postmark on the envelope indicates it was mailed on October 30. (Id. at 3).  Williams failed to return to work and was terminated on October 31, 2008.

Williams filed a charge of discrimination with the United States Equal Employment Opportunity Commission, which issued its right to sue letter on November 8, 2011.  She filed a three-count Complaint on January 24, 2012, against BCCC, the President and Board of Trustees of BCCC, and the State of Maryland alleging disability discrimination (Count I), the failure to provide reasonable accommodation (Count II), and retaliation (Count III), all in violation of the ADA.  BCCC filed this Motion for Summary Judgment on May 2, 2014.[3]  (ECF No. 45).  Williams filed her Opposition on July 3, 2014 (ECF No. 50), and BCCC filed its Reply on August 8, 2014 (ECF No. 53).  The Motion is ripe for disposition.

## II. DISCUSSION

A.   **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that

---

[3] Docket entry number 45 reflects that the Motion for Summary Judgment was made on behalf of all Defendants.  The content of the Motion, however, reflects that the Motion was made on behalf of BCCC only.  For the reasons discussed below, Count II of the Complaint will be dismissed as to all Defendants.

there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (quoting Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984).

**B.   Analysis**

   **1.   Disability Discrimination (Count I)**

The Court will deny BCCC's Motion for Summary Judgment with respect to Williams's disability discrimination claim because there is a genuine dispute of material fact concerning whether Williams was "regarded as" disabled by BCCC and whether she was discharged under circumstances raising a reasonable inference of discrimination.

7

To establish a prima facie case for disability discrimination, Williams must show that: (1) "she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (quoting Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001)) (internal quotation marks omitted). The parties dispute whether Williams is disabled within the meaning of the ADA.

A person is disabled within the meaning of the ADA if she has "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). BCCC argues Williams is not substantially limited in a major life activity due to her Keratoconus and, therefore, is not disabled under the ADA. Under subsection (C), however, an employee is "regarded as" being disabled when the employer believes an individual has an impairment that substantially limits one or more major life activity, such as seeing, when, in fact, the impairment is not so limiting. Wilson v. Phoenix Specialty Mfg. Co., 513 F.3d 378, 385 (4th Cir. 2008).

Here, Dr. Lyons ultimately concluded that Williams's symptoms substantially limited her vision such that she could not be expected to return to work on December 10, 2008. Based on Dr. Lyons's prognosis, BCCC determined that Williams was no longer qualified for her position and terminated her employment. While Williams does not dispute that she was impaired at some point after her surgeries, she and her treating ophthalmologist maintained that she could have performed the essential functions of the job without a reasonable accommodation beginning December 10, 2008.

BCCC's reliance on Dr. Lyons's opinion creates a reasonable inference that BCCC's perception that Williams was substantially limited in her ability to see led it to discount her treating doctor's medical opinion. See Phoenix Specialty Mfg. Co., 513 F.3d at 385 (finding defendant regarded plaintiff as disabled where defendant ignored the opinion of the employee's doctor in favor of its own). Thus, a reasonable juror could conclude that BCCC regarded Williams as disabled because it mistakenly believed that her nondisabling Keratoconus severely restricted her ability to see.

Further, BCCC contends that even if Williams qualifies as "disabled" under the ADA, the circumstances of her discharge do not raise a reasonable inference of unlawful discrimination. The Court disagrees.

First, on October 3, 2008, BCCC took the position that Williams's return to work date should remain as December 10, 2008. Without explanation, BCCC reversed itself only three days later, taking the position that because her symptoms were unlikely to improve by December 10, 2008, she was no longer qualified for her position. Second, Dr. Lyons's formal Workability Evaluation Clarification is dated subsequent to BCCC's notice to Williams that it determined she was no longer physically capable of performing her duties. Finally, it is unclear why Williams was not permitted to use employee-to-employee donated leave for the continuation of her expected absence through December 10, 2008. (See Def.'s Mot. Summ. J., Ex. 18 at 2, ECF No. 45-20) (indicating that the State Employee's Leave Donation Program permits employees to use donated leave for a continuous period of up to sixteen months). These facts create a genuine dispute of material fact concerning whether BCCC discharged Williams based upon a qualified disability in violation of the ADA.

Further, BCCC's October 28, 2008 termination letter, requiring Williams to return to work by October 31, was postmarked on October 30, 2008. Williams did not receive the letter until November 3, 2008 (three days after she was terminated). The brief period of time between Williams's discharge date and the postmark date on the termination letter

10

raises a reasonable inference of pretext.[4] Accordingly, BCCC's Motion for Summary Judgment will be denied with respect to Count I.

### 2. Failure to Accommodate (Count II)

The Court will grant BCCC's Motion for Summary Judgment with respect to Williams's failure to accommodate claim because, as a matter of law, failing to provide a reasonable accommodation to an employee whom an employer merely "regards as" disabled does not constitute discrimination under the ADA.

Williams contends that BCCC wrongfully failed to accommodate her by denying her extended leave until December 10, 2008. To establish a prima facie case for failure to accommodate, Williams must show that: (1) "'[s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.'" Wilson v.

---

[4] Under the proof scheme articulated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), BCCC can rebut the presumption of discrimination raised by the prima facie case by establishing a legitimate, nondiscriminatory reason for its termination of Williams. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285-86 (4th Cir. 2004). If BCCC succeeds in doing so, Williams must then "prove by a preponderance of the evidence that the legitimate reasons offered by [BCCC] were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (alteration in the original).

The parties' arguments primarily concern the first element—whether Williams qualifies as disabled under the statute. As discussed above, the Court finds a genuine dispute of material fact concerning whether Williams was "regarded as" disabled by BCCC. Ultimately, however, it is not necessary to resolve that factual question under the failure to accommodate claim because an employer is under no obligation to accommodate an employee who is simply regarded as disabled. See 42 U.S.C.A. § 12201(h) (2012) ("A covered entity . . . need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C)").[5] Accordingly, BCCC's Motion for

---

[5] Prior to the 2008 ADA amendments, the circuit courts were split on this question and the United States Court of Appeals for the Fourth Circuit has not yet decided the issue. See Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 479 n.15 (4th Cir. 2010). The 2008 ADA amendments, however, appear to adopt the view of the circuit courts finding that the accommodation provision of the ADA does not protect "regarded as disabled" employees. See 42 U.S.C.A. § 12201(h); cf. Brown v. Thompson, 374 F.3d 253, 259 n.2 (4th Cir. 2004) ("[C]ourts regularly view a conflict in the courts with regard to the proper interpretation of a statute . . . as an indication that Congress passed a subsequent amendment to clarify rather than change existing law.").

Summary Judgment will be granted with respect to Count II as against all Defendants.

### 3. Retaliation (Count III)

The Court will deny BCCC's Motion for Summary Judgment with respect to Williams's retaliation claim because there is a genuine dispute of material fact concerning whether Williams request for leave until December 10, 2008 was causally connected to her termination.

To establish a prima facie case for retaliation Williams must show that: "(1) [s]he engaged in a protected activity; (2) [BCCC] acted adversely against [her]; and (3) the protected activity was causally connected to the adverse action." Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). The parties dispute whether the third element is satisfied.

As discussed above, BCCC's change in position concerning Williams's return to work date, the timing of the formal Workability Evaluation Clarification, BCCC's reliance on the prognosis of Dr. Lyons despite the opinion of Williams's treating ophthalmologist, and its refusal to allow Williams to participate in the State Employee's Leave Donation Program create a reasonable inference that her request for leave until December 10, 2008 was the but-for cause of her termination. Accordingly, BCCC's Motion for Summary Judgment will be denied with respect to Count III.

### III. CONCLUSION

For the reasons given above, BCCC's Motion for Summary Judgment (ECF No. 45) is GRANTED in part and DENIED in part. The Motion is GRANTED with respect to Count II and DENIED with respect to Counts I and III.  Count II is DISMISSED as to all Defendants.  A separate Order will follow.

Entered this 23rd day of September, 2014

/s/
_____
George L. Russell, III
United States District Judge